FILED'08 NOV 04 14:22USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN R. WILSON-SAULS,

                Plaintiff,

     v.

MICHELLE D. CURTIS; LEROY B.
HAINS; RONALD R. HAERTLING;
LTC DAVID E. HOLLIDAY; BONNIE
ANN LAZOR; DANIEL McBRIDE;
SALLY McBRIDE; and UNITED
STATES of AMERICA,

                Defendants.

Civil No. 07-0163-AC

OPINION AND ORDER[1]

ACOSTA, Magistrate Judge:

*Procedural Background*

    Robin Wilson-Sauls filed a Second Amended Complaint ("SAC") alleging federal and state

claims against seven named individuals [2] and the United Sates of America, arising from injuries she

---

    [1]    The parties have consented to jurisdiction over this matter by the magistrate judge
pursuant to 28 U.S.C. § 636(c).

    [2]    On June 12, 2008, the United States was substituted in place of five named
individuals as the sole federal defendant in these proceedings pursuant to 28 U.S.C. § 2679(d)(1).

1 - OPINION AND ORDER                        [LB]

sustained on February 11, 2005, while working as a security guard at the Umatilla Army Depot. In addition, Wilson-Sauls's claims against Sally and Daniel McBride arose from conduct occurring after the February 2005 incident. With the exception of Sally McBride, who was sued only in her individual capacity, all individuals were sued in both their official and individual capacities.

On June 12, 2008, Wilson-Sauls voluntarily dismissed, with prejudice, Count One (*Bivens*) of her SAC. Additionally, Count Two (42 U.S.C. § 1983) of her SAC was dismissed previously by the court. *See Wilson-Sauls v. Curtis*, No 07-163-AC (D. Or. March 26, 2008) (Order adopting Findings and Recommendation).

In Count Three of her SAC Wilson-Sauls seeks relief against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2674, for negligence, breach of fiduciary duty, and intentional infliction of emotional distress under Oregon law. In Count Four of her SAC Wilson-Sauls alleges violations of Oregon common law for negligence, assault and battery, breach of fiduciary duty and intentional infliction of emotional distress. Finally, in Count Five of her SAC Wilson-Sauls seeks declaratory relief through a determination by the court that the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193, is not her sole remedy against the United States; and she seeks equitable relief through a determination by the court that she is entitled to job training, job relocation and that the United States is required to purchase her residence.

The United States filed a Motion to Dismiss all remaining claims in Wilson-Sauls SAC pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter

---

Additionally, on June 24, 2008, a Stipulated Order of Dismissal was entered as to the claims brought by Wilson-Sauls against the McBrides.

jurisdiction. Oral argument was heard and, for the reasons that follow, the United States's Motion to Dismiss is granted.

### Legal Standard

In considering a motion to dismiss under Rule 12(b)(1), the court is not limited to the facts asserted in the complaint, nor is the court required to assume the truthfulness of the factual allegations within the complaint. *See Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *accord Taha v. C.I.A.*, No. 07-1160-HA, 2007 WL 4287598, at *1 (D. Or. Dec. 4, 2007). The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over her claims. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

### Statement of Facts

On February 11, 2005, Michael C. Holloman, an employee of the Umatilla Army Depot, drove a security patrol vehicle over Wilson-Sauls, during a break in their job duties, causing her life-threatening and permanent injuries. At the time of the incident, Wilson-Sauls and Holloman were impermissibly off road and had "left [their] duties for a break." (Helen C. Tompkins Decl. Ex. 3, July 23, 2008.)

Three days later, on February 14, 2005, Michael Bowen, a specialist from the Office of Workers' Compensation Program ("OWCP"), signed the Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation on behalf of Wilson-Sauls. (Edward Duncan Decl. Ex. A at 1-3, August 6, 2008.) Wilson-Sauls does not recall ever applying for workers' compensation benefits and no document has ever been produced showing her signature on a workers' compensation application. (Robin R. Wilson-Sauls Decl. ¶ 3, July 21, 2008.)

On February 17, 2005, OWCP notified Wilson-Sauls, by letter, that it had accepted the claim based on the "crushing injury of multiple sites." (Duncan Decl. Ex. A at 4-8.) On March 15, 2005, Wilson-Sauls signed OWCP Form CA-7, a claim for compensation. Three months later, OWCP again notified Wilson-Sauls, by letter dated June 15, 2005, that her claim had been accepted and her claim had been updated to include her specific injuries. (Duncan Decl. Ex. A at 9-13.) Additionally, Wilson-Sauls completed, signed and returned questionnaires to OWCP regarding her status on August 1, 2006, November 1, 2006, and October 19, 2007. (Duncan Decl. Ex. A at 16-25.) Since Wilson-Sauls's claim was accepted by OWCP, she has received $122,171 for medical expenses and $62,346 in disability benefits. (Duncan Decl. Ex. A at 26-32 and 33-138.)

According to Wilson-Sauls, OWCP has not been paying all of her medical expenses related to the February 2005 incident. (Wilson-Sauls Decl. ¶ 4.) For example, OWCP refused to pay for prescribed medication, and Wilson-Sauls was unable to obtain the medicine ordered by her physician. (Wilson-Sauls Decl. ¶ 4 and Ex. 1) Similarly, OWCP declined to pay for X-rays ordered by Wilson-Sauls's treating physician and, as a result, Wilson-Sauls's account was turned over to a collection agency and her credit was damaged. (Wilson-Sauls Decl. ¶ 5 and Ex. 2.)

Wilson-Sauls submitted an OWCP document stating that disability payments under FECA were "temporary in nature". (Tompkins Decl. Ex. 2.) Wilson-Sauls alleges that OWCP has threatened to stop paying benefits on several occasions and she never knows whether they will pay. (Wilson-Sauls Decl. ¶ 6.)

*Discussion*

I.    FTCA Claims and FECA Preemption

The United States moves to dismiss the remaining claims in Wilson-Sauls's SAC for lack of subject jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Specifically, the United States contends that FECA is the exclusive remedy for the injuries Wilson-Sauls seeks to redress, and this court lacks jurisdiction to consider her claims. According to the United States, OWCP's acceptance of Wilson-Sauls's workers' compensation claim for the injuries she sustained in the February 2005 incident preempted any FTCA claim arising from the same facts, and FECA is her only remedy.

Wilson-Sauls challenges the government's motion on the ground that it has failed to establish the applicability of FECA. As a threshold matter, Wilson-Sauls contends that the United States has not established that she ever applied for workers' compensation benefits; that the Secretary of Labor certified her eligibility for compensation benefits; or that OWCP has paid all of the medical expenses related to the February 2005 incident. Additionally, Wilson-Sauls argues FECA does not apply because she was not injured during the performance of her duties – her injuries are not within the zone of special danger created by her job. *See, e.g., O'Leary v Brown-Pacific-Maxon*, 340 U.S. 504 (1951); *Kalama Services, Inc. v. Director, OWCP*, 354 F.3d 1085, 1091 (9th Cir. 2003). Finally, Wilson-Sauls asserts that, at a minimum, questions of fact regarding the applicability of FECA prevent dismissal of her claims.

FECA is a federal workers' compensation scheme intended to provide a remedy for work related injuries. FECA provides that "[t]he United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from personal injury sustained while

5 - OPINION AND ORDER                                                    [LB]

in the performance of his duty."  5 U.S.C. § 8102(a).[3]  Liability under FECA "is exclusive and instead of all other liability of the of the United States . . . to the employee . . . entitled to recover damages from the United States . . . because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statue."  5 U.S.C. § 8116(c).

As stated, FECA expressly excludes liability under "a Federal tort liability statute." *Id.*; *see also Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193 (1983) ("FECA's exclusive liability provision . . . was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act. . . .").  Under the statute, "employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without the need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corp.*, 460 U.S. at 194.  Congress included the exclusivity provision of FECA in 1949 "to obviate multiple recoveries by injured employees and excessive costs to the United States due to the passage of the FTCA." *Reep v. United States*, 557 F.2d 204, 207 (9th Cir. 1977) (quotations and citation omitted).

Moreover, Congress has given the Secretary of Labor exclusive authority to administer FECA and to decide all questions arising under FECA, including the question of coverage.  5 U.S.C. §§ 8145, 8149; *see also Markham v. United States*, 434 F.3d 1185, 1187 (9th Cir. 2005).  Pursuant to § 8145(2), the Secretary has delegated responsibility for administering FECA to the Director of OWCP.  20 C.F.R. § 10.1.  Once OWCP determines that disability resulted from a work-related

---

[3]        There are exceptions to coverage if the injury or death is "(1) caused by willful misconduct of the employee; (2) caused by the employee's intention to bring about the injury or death of himself or of another; or (3) proximately caused by the intoxication of the injured employee."  5 U.S.C. § 8102(a).

6 - OPINION AND ORDER                                                                                    [LB]

injury, as defined by FECA, the employee is limited to the remedies authorized by FECA, even if

a particular type of damage or consequences the claimant suffered is not compensable under FECA.

*See United States v. Lorenzetti*, 467 U.S. 167, 169 (1984).  The actions of the Secretary in granting

or denying payment of benefits under FECA are "not subject to review by another official of the

United States or by a court by mandamus or otherwise."  5 U.S.C. § 8128(b)(2).  As the Supreme

Court explained, "FECA contains an unambiguous and comprehensive provision barring any judicial

review of the Secretary of Labor's determination of FECA coverage.  Consequently, the courts have

no jurisdiction over FTCA claims where the Secretary determines that FECA applies." *Sw. Marine,*

*Inc. v. Gizoni,* 502 U.S. 81, 90 (1992) (internal citations and quotation omitted).[4]

Here, it is undisputed that Wilson-Sauls's federal workers' compensation claim for injuries

arising from the February 2005 incident was allowed by the Secretary.  Indeed, Wilson-Sauls has

received over $185,000 to reimburse her for medical expenses and for compensation benefits.

(Duncan Decl. Ex. A at 32, 138.)  While Wilson-Sauls insists that she does not recall making an

application under FECA, the record is clear that she pursued the remedies available under FECA;

the Secretary's representative authorized coverage to allow benefits; and payments have been made

and received.  Wilson-Sauls does not dispute that an application for FECA benefits was made on her

behalf; that her claim was accepted by OWCP; or that she has received the benefits provided by

FECA.

---

[4]      There are two narrow exceptions to this "absolute jurisdictional bar": courts
retain jurisdiction to consider constitutional challenges or claims for violation of a clear statutory
mandate or prohibition.  *Markham*, 434 F.3d at 1187 (citing *Staacke v. United States Sec'y of*
*Labor*, 841 F.2d 278, 281 (9th Cir. 1988).  Neither of these exceptions have been asserted by
Wilson-Sauls as a bases for jurisdiction here.

Once the Secretary exercised jurisdiction over Wilson-Sauls's claim for injuries, this court lost jurisdiction and its review was curtailed. Simply put, the Secretary's decision to accept the claim and authorize benefits was conclusive of coverage and dispositive of Wilson-Sauls's federal court action. 5 U.S.C. § 8128(b) (Whether the Secretary made the correct decision in allowing benefits is "not subject to review by another official of the United States or by a court by mandamus or otherwise."); *see also SW Marine, Inc.*, 502 U.S. at 90 ("[C]ourts have *no jurisdiction* over FTCA claims where the Secretary determines that FECA applies." (Emphasis added)). If Wilson-Sauls wanted to contest her eligibility and believed the Secretary's determination was in error, her recourse was with the Secretary as this court lacks jurisdiction to order the requested relief. *See* 5 U.S.C. §§ 8124, 8128; *see also Bennett v. Barnett*, 210 F.3d 272, 277 (5th Cir. 2000) ("By ruling on the sufficiency of the evidence, the Secretary thought coverage existed. Thus, the district court did not have jurisdiction to try the claim."). Wilson-Sauls's arguments that there are disputed questions regarding the applicability of FECA in this case are moot. Federal law clearly mandates that such acceptance of her claim by OWCP was conclusive as to FECA coverage.

Nor are Wilson-Sauls's contentions that OWCP has not been paying all of her medical expenses related to the accident, or that disability payments under FECA are "temporary in nature" relevant to the threshold legal question of jurisdiction. Rather, those challenges concern decisions in the administration of FECA and, as set forth above, are entirely within the discretion of the Secretary. *See* 5 U.S.C. § 8145; *see also Markham*, 434 F.3d at 1188 ("the Secretary's discretion to make policy choices under FECA is virtually limitless" (quotations and citation omitted)). Specifically, the Secretary may award or refuse to award compensation, 5 U.S.C. § 8124(a), and may "end, decrease, or increase the compensation previously awarded." 5 U.S.C. § 8128(a)(1).

Finally, Wilson-Sauls's Oregon common-law tort claims set forth in Count Four of her SAC are barred by the FTCA, 28 U.S.C. §§ 1346(b)(1), 2671-2680, and therefore suffer the same jurisdictional defect.[5] The FTCA is a waiver of the federal government's sovereign immunity and allows the United States to be sued for certain torts, including claims for personal injury or death caused by the negligent or wrongful act of an employee of the United States who was acting within the scope of his employment. *See* 28 U.S.C. § 1346(b)(1).[6] The Federal Employees Liability Reform and Tort Compensation Act of 1988 (FELRTCA), which amended the FTCA, provides that "[t]he remedy against the United States" under the FTCA "for . . . personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages." 28 U.S.C. § 2679(b)(1).

---

[5]    Because the FTCA – the sole basis for a state common-law tort suit against a federal employee acting within the scope of his employment – does not waive tort immunity to claims "arising out of assault [or] battery," 28 U.S.C. § 2680(h), FELRTCA mandates that government employees have absolute immunity for acts committed within the scope of their employment for common-law intentional torts. *See United States v. Smith*, 499 U.S. 160, 164-165 (1991). Accordingly, Wilson-Sauls's claim for assault and battery is expressly excluded by the FTCA and must be dismissed in any event.

[6]    28 U.S.C. § 1346(b)(1) provides:

Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

FELRTCA provides that the Attorney General or his designee may certify that a defendant employee was acting within the scope of his employment at the time of the challenged incident and the United States is substituted as the exclusive defendant and the action proceeds in United States district court. Id. at § 2679(d)(1). Thereafter, the suit proceeds as if the United States had been sued under the FTCA in the first instance. *Id.* at § 2679(d)(4). The Attorney General has the right to decide the scope of employment issue in the first instance, and his or her certification is "conclusive unless challenged." *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1994).

Here, Wilson-Sauls did not contest the Attorney General's scope of employment certification for the purposes of substitution. *Gutierrez De Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). In accordance with the statute, the United States was substituted as the sole defendant for Wilson-Sauls's tort claims and the FTCA is the exclusive remedy for torts committed by the United States. *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).

Accordingly, the court lacks jurisdiction over the claims in Wilson-Sauls's SAC seeking to recover under the FECA. Because this jurisdictional defect cannot be cured, the court must dismiss those claims with prejudice.

II.    Constitutional Challenges

A.    Substantive Due Process

Wilson-Sauls contends that this court's dismissal of her claims without any monetary relief would violate substantive due process under the Fifth Amendment. According to Wilson-Sauls, a claim under the FTCA "would provide substantial compensatory damages[,] " including both economic and non-economic damages under Oregon law, and a dismissal under FECA preemption

would eliminate her opportunity for a "substantial recovery." (Pl.'s Memo. Opp. Mot. Dismiss 31-32.)

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. Substantive due process protects individuals from arbitrary deprivation of their life liberty or property by government. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998). The Supreme Court requires, however, that the cognizable level of abuse of power by Congress is "that which shocks the conscience." *Id.* at 846. "To establish a violation of substantive due process . . . , the plaintiff is ordinarily required to prove that government action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Patel v. Peaman,* 103 F.3d 868, 874 (9th Cir. 1996) (quoting *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395 (1926)), *overruled on other grounds by Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086 (2007) .

Congress must comport with due process when abolishing or substantially modifying a common law cause of action, as a state tort claim is "species of 'property' protected by the due process clause." *Martinez v. California*, 444 U.S. 277, 281-82 (1980); *accord Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 (1982). Nevertheless, an act of Congress "adjusting the burdens and benefits of economic life comes to the Court with a presumption of constitutionality, and the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15 (1976).

To analyze a case under substantive due process, courts apply one of two levels of scrutiny. If the challenged law infringes upon a fundamental right, the court must apply strict scrutiny – the statute must be narrowly tailored to serve a compelling and legitimate government interest. *See, e.g.,*

*Reno v. Flores*, 507 U.S. 292, 301-02 (9th Cir. 1993). If the challenged law infringes some other non-fundamental liberty interest, the court applies a rational basis review – the legislation must be reasonably related to a legitimate congressional purpose. *See, e.g., Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923); *U.S. v. Carolene Products Co.*, 304 U.S. 144, 152 (1938).

Turning to Wilson-Sauls's claim that dismissal of her tort claims pursuant to FECA would eliminate her opportunity for a "substantial recovery," the court notes that there is no fundamental right to a particular state-law tort claim. Specifically, common law and state statutory rights are not rights subject to constitutional protection because they do not "vest until there is a final, unreviewable judgment." *Hammond v. United States,* 786 F.2d 8, 12 (1st Cir. 1986); *see also New York Central R.R. Co. v. White,* 243 U.S. 188, 198 (1917) ("No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit."); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 88 n.32 (1978)("Our cases have clearly established that [a] person has no property, no vested interest, in any rule of the common law. . . . The Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object, despite the fact that otherwise settled expectations may be upset thereby." (Internal quotations and citations omitted)). Moreover, in enacting FECA, Congress acted within its powers under the commerce clause of the Constitution. U.S. Const., Art. I, § 8, cl. 3 ("Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States.") Thus, Congress did not interfere with any "vested" rights of Wilson-Sauls by enacting FECA and, as such, there is no fundamental right or suspect classification involved here. A rational basis standard of review applies in this instance.

In its reply brief, the United States quotes from the Supreme Court's decision in *Lockheed*

*Aircraft Corp.,* to explain the Congressional purpose for enacting § 8116(c):

> to protect the Government from suits under statutes, such as the Federal Tort Claims
> Act, that had been enacted to waive the Government's sovereign immunity.  In
> enacting this provision, Congress adopted the principal compromise–the "quid pro
> quo"–commonly found in workers' compensation legislation:  employees are
> guaranteed the right to receive immediate fixed benefits, regardless of fault and
> without need for litigation, but in return they lose the right to sue the government.

460 U.S. at 193-94. (Def.'s Reply Mem. 10.)   Additionally, Congress included the exclusivity

provision of FECA "to obviate multiple recoveries by injured employees and excessive costs to the

United States due to the passage of the FTCA." *Reep*, 557 F.2d at 207.

As set forth above, the reasons for Congress' enactment of FECA are neither arbitrary nor

irrational.  FECA was a thoughtful and reasoned decision by Congress to provide federal

employees – injured or killed at work – with an immediate and certain remedy rather than forcing

the injured employee or surviving family members to endure the specter of litigation, often with

untimely and uncertain recovery.  At the same, Congress protected the United States from multiple

recoveries by an injured worker for the same harm.

The court finds that FECA withstands a rational basis review and does not violate substantive

due process.  Wilson-Sauls has failed to show that Congress acted unconstitutionally by enacting

FECA and preempting her FTCA claims and, therefore, her substantive due process claim must fail.

B.      Remedies Clause

Next, Wilson-Sauls contends that the application of FECA to preempt her FTCA claims

"leaves her with no remedy for her very severe personal injuries" and, thus, violates Article I, section

10 of the Oregon Constitution. (Pl.'s Memo. Opp. Mot. Dismiss 33.)  The "remedy clause" of

Article I, section 10, as it is referred, provides that: "[E]very man shall have remedy by due course

of law for injury done him in his person, property, or reputation."

Recently, the Oregon Supreme Court explained the purpose of the remedy clause:

The drafters of the Oregon remedy clause identified absolute rights respecting person, property, and reputation as meriting constitutional protection under the remedy clause. As to those rights, the remedy clause provides, in mandatory terms, that remedy by due course of law shall be available to every person in the event of injury.

*Smothers v. Gresham Transfer, Inc.*, 332 Or. 83, 124, 23 P.3d 333 (2001).

In *Smothers*, the court determined that because of the remedy clause, "[t]he legislature lacks

authority to deny a remedy for injury to absolute rights that existed when the Oregon Constitution

was adopted in 1857." *Id*. at 119.  Nevertheless, that provision did not "freeze in place common-law

causes of action that existed when the drafters wrote the Oregon Constitution in 1857." *Id*. at 124.

In other words, "[t]he legislature may abolish a common-law cause of action, so long as it provides

a substitute remedial process in the event of injury to the absolute rights that the remedy clause

protects." *Id*.

In considering whether the exclusive remedy provisions of the state workers' compensation

law violated Article I, section 10 of the Oregon Constitution, the court determined that the exclusive

remedy provision for an injured worker does not violate the remedy clause provided that a worker's

claim is accepted and the worker receives the compensation benefits. *Id*. at 135.  Specifically, the

Oregon Supreme Court explained as follows:

The first inquiry is whether a workers' compensation claim alleges an injury to an "absolute" common-law right that the remedy clause protects.  If it does, and the claim is accepted and the worker receives the benefits provided by the workers' compensation statutes, then the worker cannot complain that he or she has been

deprived of a remedial process for seeking redress for injury to a right that the remedy clause protects.

*Id.*

The Oregon Supreme Court's holding in *Smothers* is directly on point with respect to Wilson-Sauls's claim here. Wilson-Sauls has alleged her injuries resulted from violations of "absolute" common-law rights protected by Article I, section 10 of the Oregon Constitution. Moreover, her claim was accepted by OWCP, and she continues to receive the benefits provided by FECA. As such, she cannot "complain that . . . she has been deprived of a remedial process for seeking redress for injury to a right that the remedy clause protects." *Id.* Unlike the plaintiff in *Smothers*, Wilson-Sauls was not left "with no process through which to seek redress for an injury for which a cause of action existed at common law." *Id.*; *see also Lawson v. Hoke*, 339 Or. 253, 259, 119 P.3d 210 (2005) (statute precluding award of noneconomic damages to uninsured motorists did not violate state constitutional clause guaranteeing remedy for "absolute common law rights" that existed when the constitution was drafted). Rather, Wilson-Sauls objects to the economic limitations of the remedy she was provided. Such dissatisfaction does not equate to a violation of the Article I, section 10 of the Oregon constitution. Wilson-Sauls has failed to show that the application of FECA to her claims deprives her of a remedy for her injuries and, therefore, her Article I, section 10 violation must fail.

*Conclusion*

Based on the foregoing, the United States's Motion to Dismiss (doc. #129) is GRANTED

and Wilson-Sauls's Complaint (doc. #1) is DISMISSED, with prejudice.

IT IS SO ORDERED

DATED this day of November, 2008.

_____
John V. Acosta
United States Magistrate Judge